IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSE S. MOFFITT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARK BRITTON, in his individual capacity,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:21-cv-109**<br><br>**JUDGE KIM R. GIBSON** |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Mark Britton's ("Defendant") Motion to Dismiss Plaintiff Jesse S. Moffitt's ("Plaintiff") Complaint. (ECF No. 8). For the following reasons, the Court **DENIES** this motion as to Counts One, Two, Three, and Four, and **GRANTS** it as to Count Five.

## I. Jurisdiction and Venue

This Court has subject-matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims because they arise under federal law. *See* 28 U.S.C. §§ 1331, 1343(a)(3). This Court also has subject-matter jurisdiction over Plaintiff's Pennsylvania state law claims because they arise from the same case or controversy as the Section 1983 claims. *See id.* § 1367.

Venue is proper in this district because it embraces Cambria County, where this action was originally filed. *See* 28 U.S.C. § 1441(a).

## II. Background

The following facts are drawn from Plaintiff's complaint and matters of public record.[1] The Court construes the complaint in the light most favorable to Plaintiff, as it must in ruling on a motion to dismiss.

In the early hours of June 16, 2019, Plaintiff was shot in the left buttock by an unknown assailant at the Main Street Lounge in Johnstown, Pennsylvania. (ECF No. 1 ¶¶ 7–11, 21). Plaintiff and his fiancée, Lashekaha Guy, fled through the lounge's back door, and Ms. Guy transported Plaintiff to Conemaugh Hospital. (*Id.* ¶¶ 13–14). Upon arriving at the hospital, Plaintiff underwent surgery for his gunshot wound. (*Id.* ¶ 14).

Meanwhile, Defendant and other law enforcement authorities arrived at the lounge to investigate a reported shooting. (ECF No. 1 ¶ 15). During this investigation, Defendant gathered witness statements and viewed video surveillance footage of the front of the lounge. (*Id.* ¶ 16). (There was no video surveillance of the back of the lounge). (*Id.* ¶ 18). No witness interviewed by Defendant saw the shooting take place or the shooter, and no witness told Defendant that Plaintiff had shot himself. (*Id.* ¶ 17). Additionally, the video surveillance footage that Defendant reviewed showed an individual other than Plaintiff exiting the front of the lounge with what appeared to be a firearm. (*Id.* ¶ 19). No firearm was ever found in connection with the shooting. (*Id.* ¶ 22).

Thereafter, Defendant went to the hospital and spoke to one of the attending physicians. (ECF No. 1 ¶ 20). The physician did not indicate to Defendant that Plaintiff's injury was self-inflicted. (*Id.*). When he was out of surgery, Plaintiff told Defendant that he was shot in the left

---

[1] *See United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 438 (E.D. Pa. 2020) (drawing background facts in decision on motion to dismiss from amended complaint and matters of public record).

buttock by an unknown individual located behind him. (*Id.* ¶ 21). Defendant also examined the clothing that Plaintiff wore at the time of the shooting, though he did not provide Plaintiff's clothing to the crime lab for an expert opinion on this evidence, nor did he confirm whether the bullet hole indicated that the Plaintiff's wound was self-inflicted. (*Id.* ¶¶ 23, 25).

On June 18, 2019, Defendant charged Plaintiff with four offenses: (1) unlawful possession of a firearm as a felon, (2) carrying a firearm without a license, (3) reckless endangerment, and (4) disorderly conduct. (ECF No. 9-5). In his affidavit of probable cause, Defendant claimed that the placement of the bullet hole in Plaintiff's clothing indicated that Plaintiff's wound was self-inflicted. (ECF No. 1 ¶ 24). Defendant obtained an arrest warrant on the same date. (*See* ECF No. 9-2 at 2). Plaintiff was arrested on June 24, 2019. (*See id.*).

On January 3, 2020, while being held for these charges at the Cambria County Jail, Plaintiff filed a Motion for Writ of Habeas Corpus challenging the legality of his detention. (*See* ECF No. 9-2 at 2). On February 3, 2020, the Court of Common Pleas of Cambria County, Pennsylvania, granted this motion after finding that the prosecution had failed to make a sufficient showing during the preliminary hearing that Defendant had possessed or discharged a firearm on the morning of June 16, 2019. (*Id.* at 4–6). At the time of Plaintiff's subsequent release, he had been held in pretrial detention for approximately nine months. (ECF No. 1 ¶ 34). This period of detention caused Plaintiff to suffer adverse physical effects, including considerable weight loss, (*id.* ¶ 37), and physical pain and suffering. (*Id.* ¶ 78).

On June 17, 2021, Plaintiff filed a complaint in the United States District Court for the Western District of Pennsylvania. (ECF No. 1). In his complaint, Plaintiff asserts the following five counts against Defendant:

(1) Malicious Prosecution in violation of the Fourth Amendment of the United States Constitution ("Fourth Amendment") (ECF No. 1 ¶¶ 38–53);
(2) False Arrest in violation of the Fourth Amendment (*id.* ¶¶ 54–62);
(3) False Imprisonment in violation of the Fourth Amendment (*id.* ¶¶ 63–66);
(4) False Imprisonment in violation of Pennsylvania law (*id.* ¶¶ 67–72); and
(5) Intentional Infliction of Emotional Distress in violation of Pennsylvania law (*id.* ¶¶ 73–78).

On August 31, 2021, Defendant filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim. (ECF No. 8).[2] On September 20, 2021, Plaintiff requested additional time to respond to Defendant's motion to dismiss. (ECF No. 11). The Court granted this request on September 21, 2021, (ECF No. 12), and Plaintiff timely filed his opposition brief on October 12, 2021. (ECF No. 13).

## III. Legal Standard

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[3] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the

---

[2] Defendant filed a brief in support of this motion to dismiss at ECF No. 9.

[3] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach. *See id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth.") (citation omitted).

Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. Discussion

The Court first addresses Defendant's qualified immunity defense, given the importance of resolving immunity defenses "at the earliest possible stage in the litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because Plaintiff has asserted Section 1983 claims that all rest on the premise that Defendant "charged, arrested and detained [him] without any probable cause" in violation of the Fourth Amendment, (ECF No. 1 ¶ 30), the success of Defendant's qualified immunity defense turns on whether Plaintiff alleged facts sufficient to show that what Defendant knew at the time he arrested Plaintiff would not have led a reasonable police officer to conclude that he had probable cause to make that arrest. The Court finds Plaintiff's allegations adequate to make such a showing, and it therefore holds Defendant does not enjoy qualified immunity to Plaintiff's Section 1983 claims at this stage.

Working from this holding, the Court further holds that Plaintiff adequately pleaded his first four counts. The allegations indicating that Defendant lacked probable cause for arrest support Plaintiff's Section 1983 claims for False Arrest and False Imprisonment, as well as his False Imprisonment claim under Pennsylvania state law. These allegations also satisfy one element of Plaintiff's Section 1983 claim for Malicious Prosecution, while other allegations in Plaintiff's complaint satisfy the claim's other elements. However, the Court finds that Plaintiff has failed to sufficiently plead each element of the Intentional Infliction of Emotional Distress claim he brings under Pennsylvania law at Count Five.

**A. Qualified Immunity**

In his motion to dismiss, Defendant asserts that he is entitled to qualified immunity with respect to Plaintiff's Section 1983 claims (i.e., Counts One, Two, and Three). Given the importance of resolving a qualified immunity defense as early in litigation as possible, the Court must first determine whether Defendant has qualified immunity to Plaintiff's Section 1983 claims. Taking Plaintiff's allegations as true and viewing the facts in the light most favorable to Plaintiff, the Court holds that qualified immunity does not apply to bar Plaintiff's Section 1983 claims at the pleading stage.

The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson*, 555 U.S. at 231 (internal quotation marks omitted). A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because the Court can consider

"which of the two prongs of the qualified immunity analysis should be addressed first[,]" *Pearson*, 555 U.S. at 236, it may dismiss claims under the second prong "without ever ruling on" the first. *Camreta v. Greene*, 563 U.S. 692, 705 (2011). When a defendant asserts qualified immunity at the pleading stage, the Court must "determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

Plaintiff asserts three Section 1983 claims based on his allegation that Defendant violated his Fourth Amendment rights by arresting him without probable cause. (*See* ECF No. 1 ¶¶ 38–66). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An arrest qualifies as a "seizure" of a "person" under this provision. *Id.* However, "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* at 742. "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015). Rather, the right in question must be defined with a "high degree of specificity[,]" such that probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *District of Columbia v. Wesby*, 138 S.Ct. 557, 590 (2018) (internal quotations omitted). Accordingly, the specific question here is whether a reasonable officer in Defendant's position would have found probable cause to arrest Plaintiff in light of the evidence he had at that time.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has alleged facts showing that Defendant violated his well-established Fourth Amendment rights. Plaintiff's allegations indicate that, at the time he arrested Plaintiff, Defendant had no corroborative evidence even suggesting that Plaintiff had a firearm in his possession at the time of the shooting, let alone evidence suggesting that Plaintiff discharged the firearm and shot himself. Specifically, Plaintiff alleges that (a) he told Defendant that another, unknown individual had shot him in the left buttock from behind (ECF No. 1 ¶ 21); (b) no witness interviewed by Defendant told him that Plaintiff had shot himself (*id.* ¶ 17); (c) the physician who treated Plaintiff at Conemaugh Hospital did not at any time indicate to Defendant that Plaintiff shot himself (*id.* ¶ 20); (d) no firearm was ever found in connection with the shooting (*id.* ¶ 22); and (e) Defendant examined the clothing that Plaintiff wore at the time of the shooting but did not provide this clothing to the crime lab in order to receive an expert opinion on this evidence or to confirm that the bullet hole indicated that the wound was self-inflicted (*id.* ¶¶ 23, 25). Plaintiff's allegations also indicate that Defendant did know about exculpatory video surveillance footage showing that "*another* individual exited the lounge with an item appearing to be a firearm" who was "not identified to be the Plaintiff." (*Id.* ¶ 19) (emphasis added).

Based on the above allegations, the Court finds that Defendant lacked probable cause to arrest Plaintiff because a reasonable police officer would not find a sufficient basis to arrest Plaintiff given what Defendant allegedly knew at the time of arrest. Similarly, the Court also finds that qualified immunity does not apply to bar Plaintiff's Section 1983 claims at this stage of litigation because, based on Plaintiff's allegations, a reasonable person would have known that arresting Plaintiff under these circumstances would have violated Plaintiff's clearly established

Fourth Amendment right not to be seized without probable cause. *Pearson*, 555 U.S. at 231. Defendant may "raise that defense again after discovery is conducted and the factual record is fully developed." *Kessler v. Borough of Frackville*, No. 3:17-CV-2231, 2018 WL 2113648, at *7 (M.D. Pa. May 8, 2018).

**B. Count One**

For his first count, Plaintiff asserts that Defendant violated his Fourth Amendment rights by maliciously prosecuting him. (ECF No. 1 ¶¶ 38–53). The Court finds that Plaintiff adequately pleaded his claim at Count One.

To state a claim for malicious prosecution under Section 1983, Plaintiff must allege sufficient facts to demonstrate that: (1) Defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) Defendant initiated the proceeding without probable cause; (4) Defendant acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) as a consequence of the proceeding, Plaintiff suffered a deprivation of liberty consistent with the concept of a seizure. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

With respect to the first and third elements, Plaintiff alleges that Defendant initiated a criminal proceeding against him without probable cause. (*See* ECF No. 1 ¶ 30) (alleging that Defendant "charged, arrested and detained the Plaintiff without any probable cause"). As previously discussed, Plaintiff has indeed alleged facts sufficient to show that Defendant arrested him without probable cause. *See supra* Section IV.A.

With respect to the second element, Plaintiff alleges that the criminal proceeding ended in his favor. (*See* ECF No. 1 ¶ 35) (alleging that, "at a preliminary conference held in connection

with the charges filed against the Plaintiff, all charges against the Plaintiff were dismissed due to lack of evidence").

With respect to the fourth element, Plaintiff's allegations are sufficient to show that Defendant lacked probable cause to arrest him, and malice "may be inferred from the absence of probable cause." *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012) (citing *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993)).

Lastly, with respect to the fifth element, Plaintiff alleges that he was detained in the Cambria County Jail for approximately nine months following his arrest. (ECF No. 1 ¶ 34). Arrest resulting in detention is "the most common type of seizure" and will clearly satisfy the fifth element of a malicious prosecution claim. *Gallo v. City of Phila.*, 161 F.3d 217, 223 (3d Cir. 1998).

Because Plaintiff has adequately pleaded each of these five elements, the Court will deny Defendant's motion to dismiss as to Count One.

**C. Count Two**

For his second count, Plaintiff asserts that Defendant violated his Fourth Amendment rights by falsely arresting him. (ECF No. 1 ¶¶ 54–62). The Court finds that Plaintiff adequately pleaded his claim at Count Two.

A claim for false arrest under Section 1983 originates from the Fourth Amendment guarantee against unreasonable seizures. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("The Fourth Amendment prohibits arrest without probable cause."). Thus, to succeed on his Section 1983 false arrest claim, Plaintiff must show that Defendant lacked probable cause to arrest him. *Groman*, 47 F.3d at 634. Unlike a malicious prosecution claim, for which each criminal charge is analyzed independently,

a false arrest claim will fail if there was probable cause to arrest for at least one of the offenses involved. *Johnson*, 477 F.3d at 75; *see also Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (holding that for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances").

Plaintiff has alleged facts sufficient to support a legal finding that Defendant arrested him without probable cause. Because Plaintiff's allegations, if true, would deprive Defendant of probable cause to arrest Plaintiff for any of the offenses charged—(1) unlawful possession of a firearm as a felon, (2) carrying a firearm without a license, (3) reckless endangerment, and (4) disorderly conduct (*see* ECF No. 9-5)—the Court's probable cause determination provides it with a basis for finding that Plaintiff has successfully pleaded a Section 1983 claim for false arrest. The Court will therefore deny Defendant's motion to dismiss as to Count Two.

**D. Count Three**

For his third count, Plaintiff asserts that Defendant violated his Fourth Amendment rights by falsely imprisoning him. (ECF No. 1 ¶¶ 63–66). "[F]alse arrest and false imprisonment are essentially the same claim." *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999). *See also Curry v. Yachera*, No. 14-CV-5253, 2015 WL 1186014, at *5 n.20 (E.D. Pa. Mar. 13, 2015) (applying this characterization to Section 1983 false arrest and false imprisonment claims).[4] As with false arrest, a claim under Section 1983 for false imprisonment depends on a showing that

---

[4] The difference between these two causes of action is subtle and immaterial for purposes of this case. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007). A claim for false imprisonment relates to whether the arrest or seizure of the person was unlawful. *Curry*, 2015 WL 1186014, at *5 n.20 (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012)). In contrast, a claim for false arrest relates to whether the arresting officer had probable cause for bringing the charges in the first place. *Id.* (citing *Dowling v. City of Phila.*, 855 F.3d 136, 141 (3d Cir. 1988)).

the plaintiff was seized without probable cause. *Curry*, 2015 WL 1186014, at *5. The Court will again rely on its probable cause determination to find that Plaintiff successfully pleaded a Section 1983 claim for false imprisonment. It will therefore deny Defendant's motion to dismiss at Count Three.

**E. Count Four**

For his fourth count, Plaintiff asserts that Defendant falsely imprisoned him in violation of Pennsylvania law. (ECF No. 1 ¶¶ 67–72). Under Pennsylvania law, as under federal law, "false arrest and false imprisonment are essentially the same claim." *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008). "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and elements of damages." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000). "[C]ases involving false arrest claims against police officers turn on the existence or nonexistence of probable cause." *Kokinda*, 557 F. Supp. 2d at 593. Therefore, the Court will again rely on its probable cause determination to find that Plaintiff successfully pleaded a claim for false imprisonment under Pennsylvania law.

**F. Count Five**

For his fifth count, Plaintiff brings an intentional infliction of emotional distress claim under Pennsylvania law. (ECF No. 1 ¶¶ 73–78). To state a claim for intentional infliction of emotional distress, Plaintiff must allege facts sufficient to demonstrate that (1) Defendant's conduct was extreme and outrageous; (2) Defendant's conduct caused Plaintiff severe emotional distress; and (3) Defendant acted intending to cause Plaintiff such distress or with knowledge that such distress was substantially certain to occur. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217

(3d Cir. 2001). The Court finds that Plaintiff has failed to allege facts sufficient to support any of this claim's elements.

With respect to the first element, conduct will be extreme and outrageous if it "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society." *Dull v. West Manchester Tp. Police Dept.*, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009). Based on past applications of this standard by Third Circuit courts, the Court finds that the conduct Plaintiff alleges against Defendant would not rise to the level of extreme and outrageous behavior. *Compare Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) (finding outrageous conduct where officers repeatedly struck plaintiff on his face and upper body, used a taser gun excessively, and pistol-whipped him in the face with a taser gun), *with Mastromatteo v. Simock*, 866 F. Supp. 853, 859 (E.D. Pa. 1994) (finding no outrageous conduct where police officer allegedly manufactured facts to support probable cause for an arrest warrant resulting in plaintiff's detention).

With respect to the second element, this element requires a plaintiff to allege that he "suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct," which must be supported by competent medical evidence. *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010). The Pennsylvania Supreme Court understands "competent medical evidence" to be an "expert medical confirmation that the plaintiff actually suffered the claimed distress." *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). The Court finds that Plaintiff failed to plead facts showing that Defendant's conduct caused Plaintiff severe emotional distress. Plaintiff alleges that Defendant's conduct caused him "physical pain and suffering" and "considerable weight loss." (ECF No. 1 ¶¶ 37, 78). However, because Plaintiff does not support

these allegations with "expert medical confirmation," he has not adequately pleaded the claim's second element. *Kazatsky*, 527 A.2d at 995.

And, with respect to the third element, Plaintiff's only relevant allegation is that his emotional distress, "which resulted from Defendant's conduct, was foreseeable and certain." (ECF No. 1 ¶ 76). The Court need not assume the truth of a "threadbare recital[]" such as this, *Iqbal*, 556 U.S. at 663–64, and it does not find any specific facts supporting this conclusion in the complaint. Although prisons "cannot be free from discomfort[,]" *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), imprisonment alone is not substantially certain to inflict severe emotional distress. *See White v. United States*, No. 3:20-CV-291, 2021 WL 4438246, at *4 (M.D. Pa. Sept. 28, 2021) (holding that there was "no evidence that the federal actors at USP Canaan had knowledge . . . such that they were (or reasonably should have been) substantially certain that the conditions at USP Canaan would inflict severe emotional distress").

The Court must therefore grant Defendant's motion to dismiss as to Plaintiff's intentional infliction of emotional distress claim.

**V. Scope of Dismissal**

When a district court dismisses one or more claims pursuant to Rule 12(b)(6), it must permit the plaintiff the opportunity to amend the complaint unless amendment would be inequitable or futile. *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Leave to amend as to Count Five would not be inequitable and, although the Court has substantial doubts that an amended complaint would remedy Count Five's numerous

deficiencies, amendment would also not be futile because a properly-amended complaint could indeed survive a motion to dismiss. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss."). Therefore, in recognition of the "liberal approach to pleading" embodied by Federal Rule of Civil Procedure 15, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) (citing FED. R. CIV. P. 15)), the Court will dismiss Plaintiff's claim at Count Five without prejudice and grant Plaintiff leave to amend his complaint.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESSE S. MOFFITT,** | ) | **Case No. 3:21-cv-109** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARK BRITTON, in his individual capacity,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

**NOW**, this 9th day of February, 2023, for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendant's Motion to Dismiss at ECF No. 8 is **GRANTED** in part and **DENIED** in part, as follows:

(1) Defendant's motion is **GRANTED** with respect to Count Five, which is **HEREBY DISMISSED WITHOUT PREJUDICE**. Plaintiff has twenty-eight days from the entry of this order to file an amended complaint as to Count Five.

(2) Defendant's motion is **DENIED** with respect to Counts One, Two, Three, and Four.

**BY THE COURT**

Kim R. Gibson

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**