IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE S. MOFFITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 3:21-cv-109 |
| ) | Judge Stephanie L. Haines |
| MARK BRITTON, ) | Magistrate Judge Maureen P. Kelly |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM ORDER**

Presently before the Court is an Amended Complaint filed by Plaintiff Jesse Moffitt ("Moffitt") against Officer Mark Britton ("Britton") (ECF No. 40). Moffitt states that Britton violated his Fourth and Fourteenth Amendment rights under the United States Constitution pursuant to 42 U.S.C. § 1983. Britton filed a Motion for Summary Judgment (ECF No. 49), Brief in Support (ECF No. 50), and a Concise Statement of Material Facts ("CSMF") (ECF No. 51), as well as an Appendix containing sixteen exhibits (ECF No. 52). Moffitt filed a Brief in Opposition (ECF No. 55), a CSMF (ECF No. 56), and an Appendix with thirteen exhibits (ECF No. 57). Britton filed an additional CSMF in response to Moffitt's CSMF (ECF No. 58) and an Appendix thereto (ECF No. 59). Britton also filed a Reply Brief (ECF No. 60). This matter was referred to Magistrate Judge Maureen P. Kelly for proceedings in accordance with the Federal Magistrates Act, 28 U.S. C. § 636, and Local Civil Rule 72.D.

The factual allegations[1] asserted by Moffitt are that on or about 3:00 a.m. on June 16, 2019, he and his fiancé Lashekaha Guy ("Guy") were at Main Street Lounge, and that Moffitt was sitting on the couch near the back of the Lounge when a group of individuals nearby got into an argument.

---

[1] The facts are derived from Moffitt's Amended Complaint (ECF No. 40) and are undisputed unless otherwise noted.

ECF No. 40, ¶¶ 7, 8. To distance himself from the argument, Moffitt began to walk to the front of the establishment with his back toward the argument. ECF No. 40, ¶¶ 9, 10. As Moffitt was walking, he was shot by another person from behind in the left buttock. ECF No. 40, ¶ 11. It is disputed that Moffitt was shot from behind. It is Britton's belief, and the basis for Moffitt's arrest warrant, that Moffitt was holding a gun in his back waistband and that gun accidentally discharged striking Moffitt in the upper left buttock. ECF No. 52-10. After Moffitt was shot, he and Guy entered a nearby bathroom and eventually exited the establishment through a backdoor to go to the hospital. ECF No. 40, ¶¶ 12, 13.

Guy drove Moffitt to Conemaugh Hospital where medical staff determined that Moffitt had sustained a gunshot wound to his left buttock and rectum that would require emergency surgery. ECF No. 40, ¶ 14. After Guy and Moffitt's departure, Britton and other law enforcement authorities arrived at Main Street Lounge to investigate the shooting. ECF No. 40, ¶ 15. Britton in his supplemental narrative report stated that he observed blood on the couch with a blood trail leading to the women's restroom, and there was a large pool of blood near the trash can. ECF No. 51, ¶ 42; ECF No. 52-11, p. 10. Britton gathered various witness statements and viewed video surveillance of the front of the lounge. ECF No. 40, ¶ 16. There is no video footage of the back area of the lounge. ECF No. 40, ¶ 18. No witness interviewed saw the shooting take place or the shooter. ECF No. 40, ¶ 17. In Britton's report he states, "[I]t can be seen a black male, jeans, coat and hat, placing what appears to be a firearm in the front of the waistband of his pants and walking towards the front of the Lounge." ECF No. 52-11, p. 10. Britton took a phone video of this camera footage but the video from the Lounge was not preserved. ECF No. 58, ¶ 108. Britton later denied that the blurry video portrayed a firearm on the individual at the front of the Lounge after discussing it with other detectives in his department. ECF No. 58, ¶ 107.

Britton traveled to Conemaugh Hospital to continue the investigation. He spoke with the attending emergency room physician, Dr. Goldman. Britton asked Dr. Goldman if the gunshot wound appeared to be self-inflicted. Dr. Goldman was not sure. ECF No. 40, ¶ 20; ECF No. 51, ¶¶ 48, 49. Dr. Goldman described the trajectory of the bullet "as starting in the upper left buttocks and traversing downward to the right, through Moffitt's anus and lodging in his right thigh." ECF No. 51, ¶ 49. Moffitt's clothes were collected but at the time of the investigation were not submitted to the crime lab. ECF No. 40, ¶¶ 23, 25; ECF No. 51, ¶¶ 50-54. The gunshot residue kit with swabs of Moffitt's hands was not tested either. ECF No. 51, ¶ 54. Based on the placement of the bullet hole, which was through Moffitt's boxer shorts but not through his jeans, ECF No. 51, ¶ 67, Britton (in consultation with other officers) believed the evidence showed that Moffitt had accidentally shot himself. ECF No. 40, ¶ 24; ECF No. 51, ¶¶ 55-56. The bullet hole through Moffitt's boxer shorts showed stipling (powder burns) around the main bullet hole which would indicate he was shot at close range. ECF No. 51, ¶¶ 61-66.[2]

On or about June 18, 2019, Britton charged Moffitt with felony charges including prohibited felon in possession of a firearm, carrying a firearm without a license, and misdemeanor charges of recklessly endangering another person and disorderly conduct. ECF No. 40, ¶¶ 26-27. On June 24, 2019, Johnstown Police Officer Kyle Wirick arrested Moffitt and took him into custody after he was discharged from the hospital. ECF No. 51, ¶ 70. Moffitt was detained for approximately nine months in Cambria County Jail. ECF No. 40, ¶ 34. Moffitt asserts he suffered economic, physical, and emotional damages because of the extended and unjustified incarceration.

---

[2] After Moffitt was taken into custody, forensic analysis was conducted for the presence of gunshot residue ("GSR") on the swabs taken of Moffitt's hands at the hospital and the jeans and boxer shorts he wore the night of the shooting. ECF No. 51, ¶¶ 72-81. The results of this testing is irrelevant to the consideration for this Court of whether Britton charged, arrested, and detained Moffitt without probable cause. For purposes of the Court's analysis only the information that Britton had at the time he wrote his affidavit of probable cause is pertinent.

3

ECF No. 40, ¶¶ 36-37. The charges against Moffitt were dropped when the Court of Common Pleas of Cambria County considered Moffitt's Motion for a Writ of Habeas Corpus and dismissed the charges. ECF No. 52-12. Moffitt brings claims against Britton for malicious prosecution (Count I), false arrest (Count II), false imprisonment (Count III), and Pennsylvania false imprisonment (Count IV).[3]

Britton brings this Motion for Summary Judgment stating there is no issue of material fact because "[O]fficers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of the conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018).

On June 4, 2025, Magistrate Judge Kelly filed a Report and Recommendation (ECF No. 68) recommending that the Motion for Summary Judgment (ECF No. 49) be denied. The Parties were advised they had fourteen days to file objections to the Report and Recommendation. *See* 28 U.S.C.§ 636 (b)(1)(B) and (C) and Local Civil Rule 72.D.2. Britton filed Objections on June 12, 2025 (ECF No. 69), and Moffitt replied to those Objections on June 26, 2025 (ECF No. 70).

In Judge Kelly's Report and Recommendation, she provides Britton's Affidavit of Probable Cause for arrest, verbatim. ECF No. 68, p. 3. The pertinent evidence recited in the affidavit is that "large amounts of blood could be seen on the couch, floor and leading to the women's restroom." *Id.* "It was determined that the victim exited through the rear door." *Id.* "Dr. Goldman informed affiant the defendant, Jesse Moffitt, was in surgery. Dr. Goldman also advised the projectile traveled from the top/mid left buttocks, through the Anus and into the right thigh." *Id.* "[I]t is believed the defendant discharged his firearm while in the small of his back, striking himself." *Id.* Based on these averments, a magisterial district judge issued an arrest

---

[3] The Court granted a Motion to Dismiss as to Moffitt's state claim of Pennsylvania intentional infliction of emotional distress (Count V). The Court found that Moffitt had failed to state a claim. ECF No. 39, p.14.

warrant for Moffitt. ECF No. 68, p. 3. Moffitt alleges that Britton's Affidavit and preliminary hearing testimony contained knowing and reckless material misrepresentations and omissions of "significant exculpatory information." Judge Kelly agreed.

Judge Kelly, taking the record in the light most favorable to Moffitt as the non-moving party, found that there was information available to Britton that should have been included in the Affidavit at the time he completed it. She found that a reasonable trier of fact could determine there were reckless misrepresentations or omissions that would be "the kind of thing that the judge would wish to know" when considering the issuance of an arrest warrant. ECF No. 68, pp. 15-16. Judge Kelly reconstructed the Affidavit to include the facts known to Britton that were omitted to illustrate how it affects the persuasive posture of the Affidavit. *See* ECF No. 68, pp. 16-17. Judge Kelly finds that the additional text would have been material to a reviewing judge at the warrant stage to determine whether there was probable cause that Moffitt committed the charged crimes. ECF No. 68, p. 18. Judge Kelly notes that some text added to the reconstructed Affidavit are in dispute but notes that at this stage of litigation the facts must be construed in a light most favorable to the non-moving party and that issues of credibility are left to the jury. ECF No. 68, p. 17.

Britton's Objections to Judge Kelly's Report and Recommendation raise three arguments. First, he states that he did not arrest Moffitt and thus, he cannot be held responsible for false arrest or false imprisonment. ECF No. 69, p. 3. Second, he states he had probable cause to bring criminal charges against Moffitt because the information provided a "fair probability" that Moffitt was responsible for the charged crimes. *Id.* Third, Britton states that he is entitled to qualified immunity because he did not violate a clearly established constitutional right. *Id.* Moffitt in his Reply (ECF No. 70) addresses each of the raised issues. The Court considers all the arguments made by the Parties in turn.

5

### *a. Whether Britton can be held responsible for false arrest or false imprisonment.*

Asserting that he cannot be responsible for false arrest or false imprisonment because he did not take Moffitt into custody, Britton relies on *Lozano v. New Jersey*, 9 F.4th 239, 245-46 (3d Cir. 2021). Though Britton conducted the investigation and drafted the Affidavit of Probable Cause that was reviewed by the magistrate judge to support the arrest warrant, Officer Wirick, not Britton, physically arrested Moffitt and took him into custody. ECF No. 69, p. 4. Moffitt, in contest, raises the crucial point that *Lozano* involved a warrantless arrest and therefore its reasoning is inapplicable here. The facts of the *Lozano* case are as follows:

> Late one night in 2016, Lozano was eating at a Wawa in Elizabeth, New Jersey. His car was parked partly within a handicapped parking space and partly in the restricted area next to it. At approximately 3:00 AM, Sergeant Rodney Dorilus arrived at the Wawa to refuel his car and noticed Lozano's vehicle. Because Lozano has tinted windows, however, Sergeant Dorilus could not see the handicapped placard on the dashboard. So Sergeant Dorilus investigated, eventually requiring Lozano to provide his license and registration, as well as his permits for handicapped parking and tinted windows.
>
> Once Sergeant Dorilus confirmed that Lozano's license was valid, he asked if Lozano had consumed any alcohol. Lozano said no. But Sergeant Dorilus was unconvinced: He said that Lozano "reeked of alcohol," so he told Lozano that he was going to administer a field sobriety test. *Lozano v. New Jersey*, No. 17-cv-6581, 2020 WL 3542374, at *2 (D.N.J. June 29, 2020). Lozano again denied having consumed any alcohol, and he refused to submit to the field sobriety test, claiming that his injuries physically prevented him from doing so. Sergeant Dorilus then arrested Lozano.
>
> Officer David Hernandez, along with other officers, was 'present' throughout these events, *Lozano*, 2020 WL 3542374, at *2, and when Officer Hernandez first arrived at the scene, he accompanied Lozano from the Wawa outside, where Lozano spoke with Sergeant Dorilus, *see* JA 268, 280. Bodycam videos from the officers, on which the District Court relied, then show Officer Hernandez standing nearby as Sergeant Dorilus spoke with and subsequently handcuffed Lozano. After Sergeant Dorilus arrested Lozano, Officer Hernandez drove Lozano to police headquarters.

> At the station, Officer Hernandez helped process Lozano by asking for his name and taking his loose clothing. Other officers then gave Lozano two breathalyzer tests, but because of his asthma, he could not provide a sufficient breath sample. Lozano alleges that he told the officer administering the tests that he was medically unable to complete them. Then, during a third breathalyzer test, Lozano had an asthma attack and had to be taken to the hospital. He never completed a breathalyzer test.
>
> The next day, Sergeant Dorilus charged Lozano with one count of driving while intoxicated, N.J. Stat. Ann. § 39:4–50, and one count of refusal to take a breath test, N.J. Stat. Ann. § 39:4–50.2. But after Lozano provided medical records showing that he physically could not perform either a field sobriety test or a breathalyzer test, the prosecutor recommended dismissing the charges and the municipal court did so.
>
> Lozano subsequently sued Sergeant Dorilus, Officer Hernandez, and others, alleging, among other things, false arrest, false imprisonment, and malicious prosecution.

*Lozano v. New Jersey*, 9 F.4th 239, 242–43 (3d Cir. 2021). The District Court found that by transporting Lozano to police headquarters Hernandez played an integral role in the arrest and was not entitled to qualified immunity. *See id.* at 243. Third Circuit reversed the District Court and granted Officer Hernandez qualified immunity for the Section 1983 claims. *See id.* at 247.

The Court finds the *Lozano* case hardly instructive for this case. The extent of Hernandez's involvement in the arrest of Lozano was to stand nearby during the arrest and once arrested Hernandez drove Lozano to the police department and processed him. In comparison, Britton conducted the investigation and is the sole author of the Affidavit of Probable Cause that supported the arrest warrant. Britton's investigation, opinion, and signed Affidavit support the reasoning for the arrest of Moffitt. Without Britton's involvement an arrest wouldn't have occurred. This is not so for Hernandez as Lozano

7

was arrested before Lozano was involved. It is untenable to decide that the most integral source for the arrest could be absolved of the responsibility for the arrest. *See* ECF No. 68, p. 11. In the context of an arrest based on a warrant, Section 1983/Fourth Amendment liability for false arrest extends beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion. ECF No. 70, p. 12 (citing *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000)). The objection of Britton is overruled.

### b. *Whether Britton knowingly and deliberately made false statements or omissions in his affidavit of probable cause that created a falsehood in applying for an arrest warrant and whether the falsehood was material to finding of probable cause.*

Britton argues that Magistrate Judge Kelly erroneously found that it is for a jury to determine whether there were reckless misrepresentations or omissions in the Affidavit of Probable Cause. ECF No. 69, p. 6. Among Britton's arguments are that the Court must consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences, ECF No. 69, p. 6 (citing *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006));[4] that a totality-of-the-circumstances approach is employed to determine whether probable cause existed, ECF No. 69, p. 6 (citing *Maryland v. Pringle*, 540 U.S. 366, 372 n.2 (2003)); that 'plainly exculpatory evidence' and 'inculpatory evidence' must both be considered," ECF No. 69, p. 8 (citing *Wilson v. Russo*, 212 F.3d 781, 790 (3d. Cir. 2000)); and that the Court must consider whether a jury could conclude that the facts in their totality could demonstrate a "fair probability that a crime occurred." ECF No. 69, p. 8 (citing *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016)).

---

[4] Britton discusses the forensic testing that was performed that the Court determined inconsequential as it was not performed before Britton drafted the Affidavit of Probable Cause. Even so, it is questionable whether the test results are supportive of probable cause as the testing did not yield any evidence that was necessarily conclusive of a self-inflicted gun-shot wound.

The Court finds that these propositions of law support the fact that the "totality-of-the-circumstances", including exculpatory and inculpatory facts, should be considered by the reviewing magistrate judge but the total circumstances were not presented in Britton's Affidavit. Britton claims that Magistrate Judge Kelly "cherry-picked speculative, non-material, uncorroborated information during Britton's investigation" to add to the Affidavit. ECF No. 69, p. 9. This Court states that Britton did the same when presenting the facts and assertions to the magistrate judge reviewing the Affidavit. What Judge Kelly actually did was demonstrated an affidavit that contained *all* of the facts, in essence a totality-of-the-circumstances of which Britton was aware at the time he wrote the affidavit.[5]

With the Affidavit as drafted by Britton in mind, Moffitt must show "by a preponderance of the evidence" that Britton "knowingly and deliberately, or with a reckless disregard for the truth made false statements or omissions in his affidavit of probable cause that create a falsehood in applying for an arrest warrant; and such statements or omissions are material to the finding of probable cause." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d. Cir. 2000). Judge Kelly found that Britton indeed obtained information during his investigation that could be exculpatory and he failed to present it in his affidavit. *See* ECF No. 68, pp. 15-16. Judge Kelly further found that given the many facts disputed about the incident and the investigation, and given the determination at issue of whether the inclusion or exclusion of any of those facts was done in bad faith or would be material to the determination of probable cause to issue an arrest warrant, she found that there were many issues of material fact and that summary judgment is not proper. ECF No. 68, pp. 17-18. This Court agrees.

---

[5] Britton argues that he was not required to present every scintilla of information that he garnered during the investigation, nor does probable cause need to be proven beyond a reasonable doubt. ECF No. 69, pp. 10-11. Those points are hyperbolic arguments and need not be addressed.

Britton did not present the reviewing magistrate judge with a 'total' picture of the facts and evidence that were available to him at the time he wrote the Affidavit of Probable Cause. It is a matter for a fact-finder to determine whether his actions were the result of knowing and deliberate, or reckless disregard for the truth and whether his actions were material to the magistrate judge's determination of probable cause to issue the arrest warrant. Britton's objection on this subject is overruled.

### c. Whether Britton is protected by Qualified Immunity or whether he violated a clearly established constitutional right.

The determination of whether a law enforcement officer is shielded by qualified immunity depends on a two-pronged evaluation. First, whether a constitutional or federal right has been violated. Second, whether that right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001)(overruled in part on other grounds). Judge Kelly found that Moffitt's "right to not be arrested without probable cause was clearly established," as was his right not to be prosecuted without probable cause. ECF No. 68, p. 19 (quoting *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 749-50 (3d Cir. 2024)). Judge Kelly adds that a reasonable officer would have known that it was unlawful to support an affidavit of probable cause for arrest with only part of the facts. ECF No. 68, p. 19.

Defendant argues that Judge Kelly erroneously refused Defendant immunity. ECF No. 69, p. 22. He states that Judge Kelly generalized the "clearly established" law inquiry when she should have particularized it to the case facts. ECF No. 69, p. 23. Defendant further states that Judge Kelly needed to identify a case with similar circumstances to support her decision. ECF No. 69, p. 23 (citing *White v. Pauly*, 580 U.S. 73, 79 (2017)).[6]

---

[6] Defendant extrapolates an impractical position based on a very literal reading of *White*. The *White* Court states, "Of course, 'general statements of the law are not inherently incapable of giving fair and clear warning' to officers, *United States v. Lanier*, 520 U.S. 259, 271, (1997), **but 'in the light of pre-existing law the unlawfulness must be apparent,'"**

10

The Fourth Amendment right to be free from unreasonable seizure by its nature covers many possible scenarios generally; it is not a novel tenant of the Constitution. Judge Kelly performed a very specific review of the facts of this case as they applied to Moffitt's Constitutional Rights. She specifically laid out the facts known from Britton's investigation and included all facts available in the reconstructed Affidavit and concluded that a person's Fourth Amendment right is unlawfully violated if a charging officer presents an affidavit of probable cause in support of arrest that lacks the full evidentiary picture including omitting exculpatory facts, such as was apparent here. Thus, Judge Kelly properly took a general proposition of law and applied it to the specific facts of this case.

> The general principles of law that govern this case are well settled. Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 169 (1972). Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. *See United States v. Glasser,* 750 F.2d 1197, 1205 (3d Cir.1984). Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.

*Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995). As both the Magistrate Judge and Plaintiff contend this right is clearly established. It has recently been reaffirmed in *Pinky v. Meadville, Pennsylvania*, 95 F.4th 743, 746 (3d Cir. 2024),

> Police may not fake facts to find probable cause. Officer Jared Frum applied for an arrest warrant. In his application, he allegedly turned a shaky witness statement into a confident identification and left out evidence that undermined the identification's reliability. A judge then relied on this altered story to issue a warrant to arrest Kobe Pinkney. But because there was no probable cause to arrest him, Officer Frum violated his clearly established rights.

---

*White*, 580 U.S. 73, 79–80 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)(emphasis added). This Court finds that pre-existing law is abundant and clear so that the unlawfulness of submitting an affidavit of probable cause that lacks all the facts would be apparent to Britton.

11

Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time the action was taken. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818-19 (1982). To conclude that the right which the official allegedly violated is "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *See Anderson v. Creighton*, 483 U.S. 635, 635 (1987). This Court finds Moffitt's Fourth Amendment rights to be clearly established and can find no reasonable basis on which Britton would provide to the magistrate judge only certain of the facts that supported arrest and not provide the whole of the facts. Whether the presentation of such an affidavit is material to finding probable cause for Moffitt's arrest is a matter to be considered by a jury.

Upon review of the record and the Report and Recommendation (ECF No. 68), under Local Civil Rule 72.D.2, the Court will accept in whole the findings and recommendations of Magistrate Judge Kelly in this matter. Judge Kelly correctly concluded that Britton's Motion for Summary Judgment should be denied. There are issues of material fact of whether Britton, with reckless disregard, made false statements or omissions that created a falsehood in the Affidavit of Probable Cause for the arrest warrant and whether the false assertions or omissions were material or necessary to the finding of probable cause. This determination for the jury is founded upon which account of the facts the jury finds the most credible. Furthermore, it is a matter for the fact-finder of whether a reasonable officer could have conducted himself as Britton did to allow him qualified immunity.

Accordingly, the following order is entered:

## **ORDER**

AND NOW, this 25th day of November, 2025, IT IS ORDERED that the Motion for Summary Judgment (ECF No. 49) hereby is DENIED; and,

IT IS FURTHER ORDERED that the Objections (ECF No. 69) of Defendant are overruled; and,

IT IS FURTHER ORDERED that Magistrate Judge Kelly's Report and Recommendation (ECF No. 68) is adopted, as supplemented, as the Opinion of the Court; and,

IT IS FURTHER ORDERED that the jurisdiction of this case is returned to Magistrate Judge Kelly for further proceedings.

_____
Stephanie L. Haines
United States District Judge